UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>FRANCIS ENGLES,<br>  Defendant. | Criminal Action No. 19-132 (JDB) |

## MEMORANDUM OPINION & ORDER

Before the Court is a motion by defendant Francis Engles seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1). Engles contends that his age and health conditions heighten his risk of dying from COVID-19 and that this constitutes an extraordinary and compelling reason warranting a reduction of his sentence. The government opposes Engles's motion, principally on the ground that he is vaccinated against COVID-19. For the reasons set forth below, the Court concludes that Engles has not demonstrated the existence of an extraordinary and compelling reason. Accordingly, the Court will deny his motion.

## Background

Between August 2015 and February 2017, defendant Francis Engles engaged in a scheme to defraud the United States Department of Veterans Affairs ("the VA") by systematically overbilling the VA's Vocational Rehabilitation & Employment program. See, e.g., Indictment [ECF No. 1] ¶ 17. As co-owner and operator of Engles Security Training School, Engles charged the VA more for veteran enrollees than he would non-veterans, and he repeatedly submitted false documents overstating the amount of instruction veterans were receiving. See id. ¶¶ 3, 19–25. In

1

the end, Engles collected more than $337,000 from the VA over the course of the scheme. Statement of Offense [ECF No. 17] ¶ 48.

On April 18, 2019, Engles was indicted on fourteen counts of wire fraud and six counts of making fraudulent statements to the United States government. See Indictment at 11–15. Engles pled guilty to one count of wire fraud on December 17, 2019, Min. Entry, Dec. 17, 2019; Plea Agreement [ECF No. 18] at 1, and, after multiple pandemic-related postponements, this Court sentenced Engles to thirty months' incarceration on June 14, 2021, Min. Entry, June 14, 2021; Judgment [ECF No. 35] at 2. Engles reported to FCI Fort Dix in New Jersey to begin serving his sentence one month later. See Mot. for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) [ECF No. 37] ("Def.'s Mot.") at 1. On January 24, 2022, the Court received by mail a motion for compassionate release submitted by Engles pro se.[1]  See generally Def.'s Mot. The government filed its opposition to Engles's motion on March 9, 2022, see generally Gov't's Opp'n to Def.'s Mot. [ECF No. 39] ("Gov't Opp'n"), and the Court has received no reply submission from Engles. The motion is now ripe for decision.

## Legal Standard

Under the First Step Act of 2018, a court may reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," the court concludes that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).[2]  The court must make "two essential determinations" before granting a motion for compassionate release: first, "whether there are extraordinary and

---

[1] The motion was docketed by order of the Court on February 3, 2022. See Def's Mot at 1.

[2] Defendants must also exhaust their administrative remedies before bringing a motion for compassionate release. See 18 U.S.C. § 3582(c)(1)(A); see generally United States v. Douglas, Crim. No. 10-171-4 (JDB), 2020 WL 5816244, at *1–2 (D.D.C. Sept. 30, 2020). The parties agree that Engles has satisfied that requirement here. See Def.'s Mot. at 2; Gov't Opp'n at 2–3.

compelling reasons for the reduction," and second, if so, "whether . . . section 3553(a)'s purposes of punishment require maintenance of the original prison term." United States v. Johnson, 464 F. Supp. 3d 22, 30–31 (D.D.C. 2020).  "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)." United States v. Long, Crim. A. No. 10-171-1 (JDB), 2021 WL 3792949, at *1 (D.D.C. Aug. 26, 2021) (citation omitted).  That burden is substantial: "Cutting short a duly authorized prison sentence is, in the statute's own words, an 'extraordinary' step to take, and it requires a justification which is more than sympathetic and indeed nothing short of 'compelling.'" United States v. Shabazz, Crim. A. No. 17-43 (JDB), 2021 WL 4306129, at *3 (D.D.C. Sept. 22, 2021).

## Analysis

In his motion for compassionate release, Engles relies principally on the threat posed by COVID-19.  Engles is 65 years old and suffers from Type 2 diabetes, congestive heart failure, and hypertension.  See Def.'s Mot. at 4; Gov't Opp'n at 3 (conceding that Engles's medical records "reveal that the defendant . . . presents with hypertension and diabetes and a reported history of congestive heart failure"); see also Gov't Ex. A [ECF No. 41] at 22–23.  And as he notes in his motion, "[a]ll three of these conditions are listed as contributory co-morbidities leading to potentially severe consequences, including death if [he] should contract Covid-19."  Def.'s Mot. at 4; see also People with Certain Medical Conditions, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 25, 2022).  Indeed, this Court has previously recognized that an inmate's "high blood pressure and type 2 diabetes likely do heighten his risk of serious consequences from COVID-19" and that "early in the pandemic, this combination of conditions could qualify as 'extraordinary and compelling' in some cases."  United States v. Morales, Crim.

A. No. 06-248-4 (JDB), 2021 WL 4622461, at *5 (D.D.C. Oct. 7, 2021) (citing Johnson, 464 F. Supp. 3d at 36–39, and United States v. Lacy, No. 15-cr-30038, 2020 WL 2093363, at *6 (C.D. Ill. May 1, 2020)).

However, as this Court also noted in Morales, "it is no longer early in the pandemic," and merely suffering from medical conditions linked to heightened COVID-19 risk is not sufficient on its own to warrant compassionate release. 2021 WL 4622461, at *5. Instead, courts must also consider the defendant's vaccination status and the prevalence of COVID-19 at his site of incarceration. Id. at *5–6; see also, e.g., United States v. Battle, No. 21-2151, 2021 WL 4550925, at *2 (3d Cir. Oct. 5, 2021) (affirming denial of compassionate release because "infection rates were near zero in [defendant's] place of confinement, and [defendant] was completely vaccinated, giving him significant protection against reinfection" (footnote omitted)).

Both of these factors weigh strongly against compassionate release in this case. Engles is fully vaccinated against COVID-19, see Gov't Ex. A at 72 (Engles's vaccine card showing that he has received two doses of the Pfizer COVID-19 vaccine),[3] and it is now well-established that "[v]accines reduce the risk of COVID-19, including the risk of severe illness and death among people who are fully vaccinated," COVID-19 Vaccines Work, CDC, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last updated Dec. 23, 2021). Indeed, the World Health Organization has noted that the Pfizer vaccine Engles received "has an efficacy of 95% against symptomatic SARS-CoV-2 infection." The Pfizer BioNTech (BNT162b2) COVID-19 Vaccine: What You Need to Know, World Health Org. (Jan.

---

[3] The government represents that Engles received a booster dose in December 2021, but it provides no evidence for that assertion. See Gov't Opp'n at 11. The Court is unable to verify the accuracy of that claim and will not consider it here.

21, 2022), https://www.who.int/news-room/feature-stories/detail/who-can-take-the-pfizer-biontech-covid-19--vaccine-what-you-need-to-know.

As many judges in this District and around the country have noted, "the remarkable effectiveness of these vaccines raises an extremely high bar to establishing extraordinary and compelling reasons for a sentence reduction based on the risk of contracting COVID-19." United States v. Clark, Crim. No. 10-0133 (PLF), 2021 WL 5630795, at *4 (D.D.C. Dec. 1, 2021) (collecting cases from this District); accord Morales, 2021 WL 4622461, at *6 (noting that "[t]his substantial protection against COVID—and especially against life-threatening courses of the disease—seriously undermines [defendant's] purported 'extraordinary and compelling reason' for release" and collecting additional cases); see also, e.g., United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("[Defendant's] access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. . . . After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." (internal citation omitted)). Engles fails to grapple with the fact that his vaccination reduces the risk posed by COVID-19—other than his unfortunately common COVID risk factors,[4] Engles has not shown why, in light of his vaccination, COVID-19 still poses an "extraordinary and compelling" threat to his health should he remain incarcerated.

Moreover, although FCI Fort Dix has undoubtedly been hit hard by previous waves of COVID infections, it is presently COVID-free. The Bureau of Prisons reports that zero inmates or staff at FCI Fort Dix are currently positive for COVID-19, see COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 8, 2022), and the CDC

---

[4] Cf. Facts About Hypertension, CDC, https://www.cdc.gov/bloodpressure/facts.htm (last updated Sept. 27, 2021) ("Nearly half of adults in the United States (47%, or 116 million) have hypertension . . . ."); Type 2 Diabetes, CDC, https://www.cdc.gov/diabetes/basics/type2.html (last updated December 16, 2021) ("More than 37 million Americans have diabetes (about 1 in 10), and approximately 90–95% of them have type 2 diabetes.").

characterizes the surrounding county's "community level" as "low," COVID-19 by County, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/covid-by-county.html (last updated Apr. 7, 2022) (data for Burlington County, New Jersey).  Moreover, the Bureau of Prisons reports that it has completed 2,749 inmate inoculations at Fort Dix, see COVID-19 Vaccine Implementation, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 8, 2022), compared to a current total population at the facility of 3,235,[5] see FCI Fort Dix, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/ftd/ (last visited Apr. 8, 2022).  FCI Fort Dix's near-zero rate of transmission and its vaccination rate comparable to the country as a whole[6] thus further undermine Engles's claim of extraordinary and compelling circumstances.

Engles's impressive collection of other cases in which inmates at FCI Fort Dix received compassionate release due to COVID-19 runs aground on the same shoal.  See Def.'s Mot. at 11–13.  All thirteen of the cases he cites date from before vaccines were widely available.  As noted above, having received (or refused) a vaccine against COVID-19 fundamentally changes the compassionate release analysis, such that the cases Engles cites have little to no bearing on his motion.  Indeed, courts now routinely deny requests for compassionate release by fully vaccinated inmates at Fort Dix.[7]  There is simply insufficient evidence that Engles is at greater risk from

---

[5] This does not necessarily mean that 2,749 of the facility's 3,235 occupants are fully vaccinated (an impressive percentage of 85%), as the recipients of some of those inoculations may have been released and some unvaccinated inmates may have been admitted since the distribution of vaccines.  Nonetheless, it is clear that a substantial majority of inmates at Fort Dix have been vaccinated.  See also Gov't Opp'n at 6 (noting that, as of March 9, "BOP has fully vaccinated . . . 2,631 inmates (which is 71% of the current inmate population)" at Fort Dix).

[6] See COVID-19 Vaccinations in the United States, CDC, https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-total-admin-rate-total (last visited Apr. 8, 2022) (stating that 75.6% of adults age 18 or older are fully vaccinated).

[7] See, e.g., United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (affirming denial of compassionate release because defendant was fully vaccinated, "his preexisting medical conditions . . . did not place [him] at greater risk of severe illness should he be reinfected[] given the effectiveness of his vaccine," and there were "few to no positive cases at [Fort Dix]"); United States v. Schwarzkopf, No. 21-CR-117 (EK), 2022 WL 706508, at *2 (E.D.N.Y. Mar. 9, 2022) ("Mr. Schwarzkopf is fully vaccinated, and COVID-19 rates are (thankfully) subsiding rapidly. Though the facility at which he resides has struggled (along with the prison system generally) to manage the pandemic at times, there is no current indication that [Fort Dix] is unable to manage Mr. Schwarzkopf's risk profile effectively." (footnote omitted)); Clark, 2021 WL 5630795, at *4 ("In light of Mr. Clark's vaccination

COVID-19 at Fort Dix than he would be if he were released into the community. Accordingly, in light of his vaccination status and the low levels of transmission at his site of incarceration, the Court cannot conclude that Engles's age and health conditions put him at such a high risk of COVID-19 that compassionate release is warranted.[8]

Engles makes two other identifiable arguments in support of his release. These arguments take the form of a narrative history of COVID-19 at FCI Fort Dix, describing how each wave of the pandemic hit the facility and, invariably, how the staff botched its response. See Def.'s Mot. at 6–11. Interspersed throughout this narrative are various complaints about conditions at the facility, including difficulties in receiving prompt medical treatment, the existence of black mold in the showers, and an opossum "liv[ing] in a wall in the kitchen near the food storage locker." Id. at 6; see also id. at 10. Neither his allegations regarding FCI Fort Dix's handling of the pandemic nor his complaints about the facility's conditions warrant compassionate release.

First of all, Engles did not arrive at FCI Fort Dix until July 2021, see Def.'s Mot. at 1, well after the events he relates in his motion. He was thus neither subjected to nor did he witness the alleged failings on which he now relies. Engles thus appears to ask the Court to infer from his allegations of past incompetence that, in the future, staff at FCI Fort Dix might again respond improperly to pandemic conditions and subject Engles to a heightened risk of infection and death from COVID. The Court does not find such a tenuous inference warranted, and even if it did, it is not persuaded that the possibility of sub-optimal COVID response in the future constitutes an

---

status and the current COVID-19 case rates and vaccination rates at FCI Fort Dix, the Court concludes that Mr. Clark has not established extraordinary and compelling reasons for a sentence reduction.").

[8] The government asserts that Engles is scheduled to be released to home confinement "at the end of March," a development which "should moot many of his arguments." Gov't Opp'n at 21. But the government provides no support or documentation for this assertion and fails to even specify a date on which the motion would allegedly become moot. The Court thus has no basis to assess this claim and will not consider it, especially since the Court would deny the motion regardless.

extraordinary and compelling reason warranting release now. And of course, this sets to the side the fact that, whatever struggles FCI Fort Dix may have had in dealing with earlier waves of the pandemic, it now seems to have hit upon a winning strategy for preventing COVID-19 infections.

Moreover, Engles's allegations regarding the conditions at FCI Fort Dix, even assuming their truth, are applicable to every one of the more than 3,000 inmates at FCI Fort Dix (and likely to thousands more prisoners incarcerated at facilities with similar issues). As a consequence, without a showing of how these conditions specifically threaten Engles, they cannot support his compassionate release. Compassionate release is a safety valve designed to ameliorate extraordinary individual hardships caused by incarceration. See, e.g., Shabazz, 2021 WL 4306129, at *6 ("Compassionate release is a mechanism built on the recognition that some consequences of incarceration are so serious as to justify release . . . . But this mechanism is for only the most exceptional cases."). And by their very terms, "extraordinary and compelling" reasons must be "most unusual, far from common, and having little or no precedent." United States v. Hunter, 12 F.4th 555, 562 (6th Cir. 2021) (internal quotation marks omitted) (quoting Webster's Third New International Dictionary: Unabridged 807 (1971)). The Court simply sees no evidence that delays in medical appointments and a marsupial visit pose the kind of threat to Engles warranting the "extraordinary step" of "[c]utting short a duly authorized prison sentence." Shabazz, 2021 WL 4306129, at *3 (internal quotation marks omitted).

Engles has thus failed to demonstrate the existence of extraordinary and compelling reasons warranting a reduction in his sentence. The Court therefore need not address the application of § 3553(a) to his case: "an inmate may not be granted compassionate release without a finding of an extraordinary and compelling reason, no matter how the § 3553(a) factors shake

out." Shabazz, 2021 WL 4306129, at *6.  Upon consideration of [37] defendant's motion for compassionate release, and the entire record herein, and for the reasons set forth above, it is hereby

**ORDERED** that defendant's motion is **DENIED**.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: April 8, 2022